# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND SANDOVAL, et al., <br><br> Plaintiffs <br> vs. <br> CITY OF NATIONAL CITY, et al., <br><br> Defendants. | Case No.: 22cv0188-MDD <br><br> **ORDER GRANTING JOINT MOTION TO CONFIRM MINORS' COMPROMISE** <br><br> [ECF No. 18] |

Pending before the Court is a Joint Motion to Confirm Minors' Compromise to confirm the settlement entered into on behalf of the minor Plaintiffs in this action, Lisa P. ("Lisa") and Izik S. ("Izik," and together with Lisa, the "Minors"). (ECF No. 18).[1] Lisa and Izik's aunt, Sienna Sandoval, represents them as guardian ad litem ("GAL"). (ECF No. 18-3 [Ramirez Decl.]). Plaintiffs are represented in this case by their attorney, Manual Luis Ramirez. (*Id.*). The Minors request that the Court approve the settlement in this action. No objection was filed. (*See* ECF No. 17

---

[1] The parties consented to have U.S. Magistrate Judge Mitchell D. Dembin conduct all proceedings in this case, including trial, the entry of final judgment, and all post-trial proceedings. (ECF No. 20).

(setting November 30, 2022 deadline to file objection to the Motion)). For the reasons stated below, the Court **GRANTS** the Motion.

## I.    RELEVANT BACKGROUND

This case was originally filed in the Superior Court for the County of San Diego. (*See* ECF No. 1). Defendants removed the case to this District Court on April 7, 2022. (*Id.*). Through the parties' Joint Motion (ECF No. 18), they agreed to the following facts in this case:

On April 23, 2020 at approximately 4 p.m., Plaintiffs Raymond Sandoval (RAYMOND) and Kayleen Torres (KAYLEEN) were in the street next to the family van which was lawfully parked in front of their apartment complex, located at 1131 B Ave, in National City. RAYMOND and KAYLEEN were loading their children into their vehicle when they were approached by one National City Police Department ("NCPD") police officer ("Officer Doe 1"). The officer informed them that they were allegedly responding to a 911 call regarding a woman in the area screaming for help.

RAYMOND and KAYLEEN stated they had no knowledge of the 911 call or the facts surrounding why it was made. Instead of continuing to search for the distressed subject of the 911 call, Officer Doe 1 began asking RAYMOND and KAYLEEN several questions including where they lived. RAYMOND asked why it was relevant where they lived, since they knew nothing of the 911 call. He also asked whether he and KAYLEEN were being detained. While Officer Doe 1 was speaking with RAYMOND and KAYLEEN, Officer Doe 1 drew his taser but did not discharge it. Plaintiffs contend that at no point during this exchange with Officer Doe 1 did either RAYMOND or KAYLEEN make any physical threats toward him.

After additional words were exchanged, more unknown National City police officers arrived on the scene, including a K9 officer ("Officer Doe 3").

1  RAYMOND observed a National City police officer ("Officer Doe 2")
2  approach KAYLEEN who at the time was standing near the sliding van
3  door and not presenting a threat to anyone.  At this same time,
4  RAYMOND was standing next to the open front passenger door.  Officer
5  Doe 2 approached KAYLEEN from the street and without warning
6  grabbed her right arm moving her toward him and away from RAYMOND
7  and Officer Doe 1.  Seeing this, RAYMOND yelled, "She's pregnant! She's
8  pregnant!"
9      From Officer Doe 1's perspective, it appeared that Raymond took a
10 step toward Officer Doe 2 as he yelled and pointed in the direction of
11 Officer Doe 2. Officer Doe 1 believed that RAYMOND was going to assault
12 Officer Doe 2 and took RAYMOND to the ground. Officers Doe 1 and Doe 2
13 attempted to place RAYMOND'S hands behind his back and into
14 handcuffs. RAYMOND contends he was not resisting this attempt to place
15 his hands behind his back to be handcuffed.  K9 Officer Doe 3 arrived and
16 contends he provided verbal warnings to RAYMOND to comply with
17 officers before releasing his dog.  RAYMOND denies the K9 officer ordered
18 him to comply.  The dog bit RAYMOND on the right side of his rib cage.
19 During the incident, RAYMOND'S right ankle was fractured.
20     Minor Plaintiffs Lisa and Izik witnessed the entire situation causing
21 them to scream, cry, and fear for RAYMOND'S safety.  Minor Plaintiff
22 Lisa is not the biological daughter of RAYMOND.  Her basis for damages
23 is observing her biological mother, KAYLEEN, being allegedly battered by
24 a NCPD officer.  Minor Plaintiff Izik is the biological son of RAYMOND
25 and KAYLEEN.  His basis for damages is bystander liability.
26     Neither Lisa nor Izik required any type of counseling.  As such, no
27 medical bills have been incurred.  Both Minors suffered with occasional
28 bad dreams and fear of the police. When Izik sees a police car, he

oftentimes asks if the police are going to do something to RAYMOND or KAYLEEN again. Thankfully neither Lisa nor Izik suffered any drop in school grades nor were there any incidents of them acting out in an anti-social manner. In addition, there have been no disciplinary issues with either of them at home. (ECF No. 18-2 [Torres Decl. ¶ 5]).

The Complaint alleged several constitutional violations under 42 U.S.C. § 1983 and California Civil Code § 52.1, as well as several tort claims. (ECF No. 1).

Proposed Settlement Terms

Pursuant to the proposed settlement, Defendants will pay the gross settlement sum of $100,000 to settle all claims against them in this action. Of that amount: $92,000 will be paid to Raymond; $5,000 will be paid to Kayleen; $1,500 will be paid to Lisa; and $1,500 will be paid to Izik. (ECF No. 18-3 [Ramirez Decl. ¶ 5]).

No attorney's fees or costs will be deducted from Lisa and Izik's portions of the settlement. (*Id.* ¶ 6). The GAL is aware that counsel for Plaintiffs has waived attorney fees for both Lisa and Izik and has not attributed any costs to them. (ECF No. 18 [Ramirez Decl. ¶ 6], [Sienna Decl. ¶ 6]). In addition, the Minors received no medical counseling or treatment as a result of this incident. As such, there are no medical costs or liens to be paid from the $1,500.00 settlement amounts. (*Id.* [Ramirez Decl. ¶ 4], [Torres Decl. ¶ 5], [Sienna Decl. ¶ 4]).

The parties and the GAL agree that the apportionment of the settlement funds among the respective Plaintiffs reflects the extent to which each Plaintiff suffered symptoms of the harm alleged. The GAL is familiar with the facts and circumstances of this case and attests that the apportionment of the settlement funds is appropriate as outlined above. (*Id.* [Sienna Decl. ¶¶ 3, 7]).

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 17(c), district courts have a special duty to safeguard the interests of litigants who are minors. S*ee Robidoux v. Rosengren*, 638 F.3d 1177, 1179 (9th Cir. 2011); Fed. R. Civ. P. 17(c).  Rule 17(c) provides, in relevant part, that a district court "must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action."  Fed. R. Civ. P. 17(c).

With respect to proposed settlements in lawsuits involving minor plaintiffs, this special duty requires district courts to "conduct [their] own inquiry to determine whether the settlement serves the best interests of the minor."  *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978); *see also Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983); CivLR 17.1(a) (minor's claim may not be settled without court approval).  The Court considers "whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases . . . without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiff's counsel."  *Robidoux*, 638 F.3d at 1182.

## III. DISCUSSION

### A. Fairness and Reasonableness of Settlement Amount Distributed to Lisa and Izik

Sienna Sandoval, the Minors' GAL, agrees the settlement is fair and reasonable.  (ECF No. 18-1 [Sandoval Decl. ¶ 3]).  Having considered the settlement amounts approved in other cases involving psychological harm after witnessing police violence against a minor plaintiff's parents, the

Court also concludes that the proposed settlement amounts are reasonable and fair to Lisa and Izik.

Courts in this District have approved settlements of $5,000 and $10,000 for minor plaintiffs who suffered more extensive psychological harm than exists here after other minors have witnessed police violence against their parents. *See Valenzuela v. San Diego Police Dept.*, Case No. 3:19-cv-0002-LL-DEB, 2022 WL 2438421, at *1–2 (S.D. Cal., Dec. 12, 2022) ($5,000 settlement where minor plaintiff witnessed police violence against mother); *Lobaton v. City of San Diego*, Case No. 3:15-cv-1416-GPC-DHB, 2017 WL 2610038, at *1 ($10,000 settlement where three-year-old witnessed police officers violently assault, handcuff, and forcibly take away his mother and brother).

The Minors' recovery here is in an appropriate range as those comparable settlements, but the monetary amount is less in this case because of the Minors' lesser injury. Like the *Valenzuela* and *Lobaton* plaintiffs, these Minors allege they witnessed police violence against their parents and suffered psychological harm as a result. But the Minors' psychological harm here is limited to "occasional bad dreams" and, for Izik, a "fear of police officers." (ECF No. 18-2 [Torres Decl. ¶ 5]).

Neither minor here required intervention from medical or mental health professionals, as occurred in *Valenzuela* and *Lobaton*, nor did either suffer behavioral changes, as the *Lobaton* plaintiff did. (ECF No. 18-1 [Sandoval Decl. ¶ 4]); *Valenzuela*, 2022 WL 2438421, at *1 ("Plaintiff underwent counseling sessions to cope with the emotional distress"); *Lobaton*, 2017 WL 2610038, at *1 (describing behavioral changes in three-year-old plaintiff and need for twenty-seven counseling sessions). The

proposed settlement amount of $1,500 to Lisa and $1500 to Izik is reasonable based on the facts and background reviewed in this case.

### B.      Method of Disbursement

Courts can use a wide variety of methods for the disbursement of settlement funds to a minor.  *See* Cal. Prob. Code § 3600 *et seq.*  Here, the parties request that each minor's $1,500 settlement amount be deposited in an interest-bearing, federally insured blocked account in that minor's legal name, with no withdrawals permitted, except with a written order of this Court or any other court of competent jurisdiction, until that Minor reaches 18 years of age, at which time depository would be permitted, without further court order, to distribute all funds in that account to the Minor.  (ECF No. 18 at 4-5).  The Court finds that the method of disbursement is fair, reasonable, and within the bounds of applicable law. *See* Cal. Prob. Code § 3602(c)(1).

### C.      Attorney's Fees and Costs

The GAL is aware that counsel for Plaintiffs has waived attorney fees for both Lisa and Izik and has not attributed any costs to them. (ECF No. 18 [Ramirez Decl. ¶ 6; Sienna Decl., ¶ 6]).  The Court finds this is reasonable.

## IV.    CONCLUSION AND ORDER

The Court has reviewed the terms of the settlement proposed here, it is familiar with the evidence, and has reviewed the parties' positions in favor of this settlement.  The Court is fully informed of the specifics of the full and final terms and conditions of the settlement, including approval of the settlement on behalf of the Minors by this Court.  The Court finds that the terms and conditions of this settlement are fair, reasonable, and in the

best interests of the Minors, as further attested to and agreed upon by the GAL.  (ECF No. 18 [Sienna Decl. ¶ 7]).

**IT IS THEREFORE ORDERED** that the settlement described by the Joint Motion to Approve the Minors' Compromise is approved.

**IT IS FURTHER ORDERED** that Sienna Sandoval, as Guardian ad Litem of the Minors, is authorized and required to sign the Settlement Agreement and any other documents that are necessary to consummate this settlement on behalf of the Minors, and to provide any information and documentation necessary to complete the settlement and deposit of funds as stated herein.

**IT IS FURTHER ORDERED** that Defendants will issue a check for the entirety of the settlement sum, $100,000.00, to the "THE RAMIREZ LAW FIRM CLIENT TRUST ACCOUNT."  Counsel for the Minors will issue a check for $1,500.00 in the legal name of each minor Plaintiff for "deposit only" into a federal insured blocked bank account for each minor.  The Minors' counsel shall file in this Court proof of deposit of the settlement amounts into accounts for the Minors that are compliant with terms of this Order.  Once the funds are distributed to the Minors, counsel may distribute the remainder of the funds as agreed upon by the parties.

**IT IS FURTHER ORDERED** that Plaintiffs' counsel, upon final execution of a Settlement Agreement and upon receiving notice regarding establishment of the interest-bearing, federally insured blocked accounts for each minor Plaintiff and other relevant terms of settlement, shall file with this Court a dismissal of the claims against Defendants, with prejudice, with each party bearing its own costs, expenses, and fees.

**IT IS SO ORDERED.**

Dated: January 6, 2023

Hon. Mitchell D. Dembin
United States Magistrate Judge